**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**COREY BROWN, COREY BOWERS,**
**MAURICE GRIFFIN, NELSON**
**RUSSELL, CHARLIE WILLIAMS and**
**DAVID MOBLEY,**

       **Plaintiffs,**

**v.**                                              **Case No:   6:13-cv-979-Orl-31TBS**

**VCNA PRESTIGE CONCRETE**
**PRODUCTS, INC.,**

       **Defendant.**

## ORDER

This matter is before the Court on Defendant VCNA Prestige Concrete Products, Ins.'s ("VCNA") Motion to Dismiss the Second Amended Complaint (Doc. 41) ("Motion"), the Plaintiffs' Response in opposition (Doc. 45) ("Response"), and the Defendant's Reply in support of the Motion (Doc. 49) ("Reply").

**I.     Background**

The Plaintiffs allege that their employer, VCNA, engaged in various racially discriminatory practices. VCNA manufactures concrete for construction and transports the concrete to building sites. The Plaintiffs were either drivers or delivery dispatchers with VCNA's concrete mixing and delivery operation. The position of dispatcher is asserted to be of higher value than driver because it is better paid and is based on salary instead of hourly compensation, amongst other reasons. The Plaintiffs allege that VCNA personnel demoted black employees from the position of dispatcher, prevented them from advancing to the position of dispatcher, engaged in or permitted insults and intimidation against the Plaintiffs based on their race, and reduced their hours.

The Plaintiffs' complaint has been through several iterations, the first two named the wrong defendant. It appears the Plaintiffs have had difficulty determining which entity of several related and similarly named entities should be sued. The Plaintiffs' Complaint and Amended Complaint named as the defendant Votorantim Cimentos North America, Inc. d/b/a/ VCNA Prestige Concrete Products, Inc., f/k/a Prestige A/B Ready Mix ("Votorantim"). (Docs. 2, 4). Soon after the Amended Complaint was filed, the Defendant's Motion to Dismiss or for Summary Judgment's first argument was that the Plaintiffs got the wrong defendant—i.e. the named defendant never employed the Plaintiffs. (Doc. 17 at 7-9). The Plaintiffs' response recounted overlaps between the various companies related to VCNA and requested leave to amend the complaint, (Doc. 28 at 3-4, 7), which the Court granted, (Doc. 34). The Plaintiffs continued to have difficulty tracking down the proper corporate defendant, (Doc. 35) so the Court ordered the Defendants to respond to Plaintiffs' interrogatories to clarify the relationships between VCNA's related businesses. Now, Defendants are attempting to use the time that elapsed while the Plaintiffs attempted to untangle the corporate structure to argue that the statute of limitations has elapsed.

The Defendant's principle argument to dismiss the case asserts that a substantial part of Plaintiffs' Second Amended Complaint is untimely because the Second Amended Complaint, which now names the correct defendant, does not relate back to the date of the original complaint. VCNA also contends that, even if the Second Amended Complaint relates back, then multiple individual counts have failed to state a claim and should therefore be dismissed.

**II.     Standard**

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R.

Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

### III.   Analysis

#### A.  Second Amended Complaint Relates Back

Whether the Second Amended Complaint relates back to the date the Complaint was filed is governed by Federal Rule of Civil Procedure 15(c)(1)(C). *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' . . . ."). In *Krupski,* the Supreme Court noted:

> A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.

*Krupski*, 560 U.S. at 550.

Because the Plaintiffs added a formerly unnamed defendant, there are four steps in a relation back analysis under Rule 15(c)(1)(C). First, the claim or defense must arise out of the actions set out in the original pleading. *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013) (reciting circumstances when relation back is permitted under Rule 15 when substituting previously unnamed defendant). Second, the proper party must have received notice of the action such that it will not be prejudiced. *Id.* Third, the party being added must have received that notice within the time period of Rule 4(m), which sets forth a 120 day time limit. *Id.* And fourth, the proper party must either have known or should have known the action would have been brought against it but for a mistake of identity. *Id.* The Defendant's only argument on this issue is that the Plaintiffs' Complaint was filed against Votorantim either as a strategic decision or due to a lack of knowledge, therefore there was no mistake and the fourth element of the test is not met.[1]

A mistake is defined as "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary (9th ed. 2009). When two corporate entities are closely related and have similar names, choosing the wrong one is readily explainable as a mistake. *See Krupski*, 560 U.S. at 556 (noting that when companies are related and have similar names those factors "heighten the expectation that [the correct defendant] should suspect a mistake has been made when [incorrect defendant] is named in a complaint that actually describes the [correct defendant's] activities").

---

[1] The pleadings and procedural history of this case make it clear that all other elements of Rule 15(c)(1)(C) have been met for the Second Amended Complaint to relate back to the original Complaint.

Further, knowing of the existence of both entities does not entail the absence of a mistake. *Id.* at 548 ("[I]t would be error to conflate knowledge of a party's existence with the absence of mistake.").[2] Accordingly, if the Plaintiffs misunderstood the corporate structure of VCNA and the related entities, such that it resulted in a mistake concerning the proper party's identity, then the amended pleadings should relate back.

VCNA is a part of a group of related companies which, in at least some cases, have a history of informal contracts for provision of shared services, including those related to human resources and management. (Doc. 45-2 at 10-11). Several of these entities appear to share the same corporate headquarters and have similar names. (*See* Doc. 45 at 4-5).[3] Further, VCNA, or its agents, misidentified the company that was paying Plaintiff Brown, (Doc. 35 at 8) or were not clear in identifying the full name of the employer in paperwork from the company (*Id.* at 10). It is no wonder that there was confusion and misunderstanding on the part of the Plaintiffs about which company employed Plaintiffs.

---

[2] The Court notes that Defendant relied on *Powers v. Graff*, 148 F.3d 1223, 1227 (11th Cir. 1998) for the proposition that knowledge of the existence of the correct party prior to the running of the statute of limitations precludes a mistake within the meaning of Rule 15(c)(1)(C). (Doc. 41 at 9). However, *Krupski*, a 2010 Supreme Court case, plainly stated it did not agree with this account of mistake. The Supreme Court said:

> We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity. We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake.

560 U.S. at 549.

[3] Notably, the Defendant's Reply does not contest the information alleged about the Defendant's related companies, company formations, mergers, and dissolutions. (Doc. 49).

- 5 -

VCNA attempts to portray the Plaintiffs' naming Votorantim as a strategic decision to get at the deeper pockets of the Defendant's corporate parent. This argument is simply unconvincing. The discovery filings before this court and motion practice make clear that Plaintiffs were diligently attempting to discern which corporate entities existed at what times and how they worked together to operate the concrete business—not hunt for the deepest pockets. (*See* Docs. 28, 35).

Next, in a seemingly contradictory argument, the Defendant asserts that the Plaintiffs lacked knowledge of the proper defendant and that lack of knowledge cannot constitute a mistake. While there is a rule that a plaintiff may not rely on a lack of knowledge to establish a mistake for purposes of relation back, that does not apply here. The Plaintiffs were aware of multiple corporate entities, and when faced with multiple choices, it appears they selected one—admittedly the wrong one. However, an incorrect choice based on information is not the same as a lack of knowledge. To state what should be obvious, an incorrect choice based on information is a mistake. The rule precluding relation back based on a lack of knowledge is designed, at least in part, to prevent a plaintiff from naming a "John Doe" defendant and, after the statute of limitation had run, amend the pleadings to include the correct defendant effectively circumventing the statute of limitations. *See Lelieve v. Orosa*, 10-23677-CIV, 2011 WL 5103949, at *4 (S.D. Fla. Oct. 27, 2011) (observing that "John Doe" pleadings cannot be used to circumvent statute of limitations). That is not what happened here.

The corporate structure, company formations, mergers, and dissolutions make a mistake of the proper defendant understandable, if not expected in this case. The Defendants have given no plausible theory or indication that this was anything other than a simple mistake on the part of the Plaintiffs. Accordingly, the Second Amended Complaint relates back to the filing of the Complaint, and the claims are timely.

### B. Whether Individual Counts have Stated a Claim

#### i. Plaintiff Griffin's Racial Discrimination Claims

Defendant argues that Griffin's failure to train claim must be dismissed because he has not identified a similarly situated employee that received preferential treatment that was not a member of Griffin's protected class and that the claim is time barred. Griffin's allegation that VCNA failed to train him due to racial discrimination was one of multiple theories of racial discrimination. Griffin asserted four counts[4] and in the two race discrimination counts he alleges disparity in pay, in work hours, and in terms and conditions of his employment in addition to a failure to train him. Accordingly, even if Griffin did not allege that similarly situated non-black employees received training due to discriminatory practices, there are multiple other theories of disparate action that support a race discrimination claim which is enough to survive a motion to dismiss.[5]

---

[4] Griffin asserted two counts for racial discrimination in violation of Title VII and section 1981 (Count X), and in violation of the Florida Civil Rights Act ("FCRA") (Count XI), and two counts for permitting a hostile work environment in violation of Title VII and section 1981 (Count XII), and in violation of the FCRA (Count XIII).

[5] Defendant's argument is unclear, but it may be read as attempting to argue that Griffin failed to plead a prima facie case for *any* form of racial discrimination because he failed to identify a similarly situated individual outside his protected class that was treated favorably. *See Ashmore v. F.A.A.*, 11-CV-60272, 2011 WL 3915752 (S.D. Fla. Sept. 2, 2011) (dismissing case where plaintiff failed to identify at least one similarly situated employee outside the plaintiff's protected class). However this argument still fails because the pleadings call out non-protected individuals who are alleged to be similarly situated and who were preferentially treated. The fact section devoted to Griffin specifically (Doc. 39 ¶¶ 91-100) did not supply a name of a similarly situated white employee, but other allegations do. For example, paragraph 94-95 allege that Griffin was a driver and that he was prevented from attaining a dispatcher position due to his race. Earlier in the pleading, in the allegations specific to Brown, the Plaintiffs provide seven names of white individuals that were promoted to the position of dispatcher. (Doc. 39 ¶¶ 73-76). While there is not much detail about these white employees included in the complaint, the Plaintiffs are not required to plead detailed facts. These allegations, when taken in concert and considering the surrounding allegations are enough to state claims for racial discrimination. Whether the white employees were, in fact, similarly situated is better addressed at summary judgment or trial.

Defendant also asserts that Griffin's failure to train claim is time barred because "the Complaint alleges that this happened in February 2009, which is outside the four years statute of limitations under Section 1981 (even utilizing the date of the filing of the original complaint on May 31, 2013) . . . ." (Doc. 41 at 22). However, this assertion boarders on a misleading retelling of the Plaintiffs' allegations. The Second Amended Complaint asserts "Griffin was trained by Prestige for the Backup Dispatcher position on or about February of 2009." (Doc. 39 ¶ 92). This alone demonstrates that the alleged misconduct was not limited specifically to February, but was sometime on or about February 2009—it very well could have included May 2009. The Complaint goes on to say "Prestige *then* stopped Griffin's training and he was denied the Backup Dispatcher's position because he [sic] that there were to be no 'coons in the kitchen.' " (*Id.* ¶ 93 (emphasis added)). Obviously the discontinuation of his training happened *after* it was initiated on or around February 2009. While it is possible that this all occurred prior to May 31, 2009 and there may be a statute of limitations defense, it is far from clear that the defense applies based on the allegations in the complaint. Such issues are better addressed at summary judgment. *See U.S., ex rel. Beattie v. Comsat Corp.*, 896-CIV-966T-24MAP, 2001 WL 35992080 (M.D. Fla. Apr. 18, 2001) (recognizing that statute of limitations arguments are best addressed at summary judgment unless the complaint plainly and affirmatively shows that the statute of limitations conclusively bars the action).

### ii. Purported Pleading Oversights Relating to Plaintiffs' Griffin, Russell, and Williams' Constructive Discharge Allegations and Bowers, Russell, and Williams' Promotion and Transfer Allegations

Defendant asserts that the Second Amended Complaint includes certain errors related to the allegations of constructive discharge, unfair job placement, promotion disparities, or involuntary transfers for Plaintiffs Bowers, Griffin, Russell, and Williams. At base, Defendant contends that several theories of how the Plaintiffs suffered harm based on racial discrimination are not supported by factual allegations—i.e. Defendant says Griffin, Russell, and Williams' constructive discharge

claims are unsupported and Bowers, Russell, and Williams' biased promotions and transfer allegations are unsupported.[6] These allegations of discrimination are not the sole basis upon which the relevant counts are predicated. In addition to constructive discharge, Griffin, Russell, and Williams assert discriminatory disparity in pay and work hours and for Bowers, Russell, and Williams' hostile work environment counts, they also assert disparity in pay and work hours, not just biased promotion and transfers.

In other words, the Defendant has picked an individual theory, amongst a group of theories, about how the Plaintiffs' rights were allegedly violated and asked the Court to dismiss the count to the extent it relies on the individual theory. Defendant's request is not proper for a Rule 12(b)(6) motion. The question the Court must address in the context of a Rule 12(b)(6) motion is whether the Plaintiffs have alleged enough to create a cognizable claim under the relevant cause of action—the Plaintiffs have met this standard. *Baxter Intern., Inc.*, 345 F.3d at 880 (citing Fed. R. Civ. P. 8(a) and noting that the basic question is whether a plaintiff has asserted enough to show the pleader is entitled to relief); *c.f. Iqbal*, 556 U.S. at 678-79 (noting the pleading must demonstrate that there is a plausible claim for relief).

### iii. Bowers Constructive Discharge Claim

Defendants seeks to have the Court dismiss Bowers' constructive discharge claim for Counts V and VI. Again, Counts V and VI assert racial discrimination based on multiple theories of discriminatory action. As previously explained, a Rule 12(b)(6) motion is not the vehicle to dismiss a single theory of discrimination amongst many. Additionally, Defendant cites many cases for the

---

[6] For Griffin, Russell, and Williams' assertions of constructive discharge, Defendant is specifically addressing the race discrimination claims in Counts XI, XVIII, XIX, XXII, and XXIII. (Doc. 41 at 22). For Bowers, Russell, and Williams' assertions of biased promotion and transfer, Defendant is specifically addressing the hostile work environment claims in Counts VII, VIII, XX, XXI, XXIV, and XXV. (*Id.* at 23).

proposition that threatening to terminate an employee, without more, is insufficient to assert a claim of constructive discharge. Yet almost none of those cases address the sufficiency of pleadings— they principally address fact issues at summary judgment or post-verdict motions. The final case Defendants rely on that did address pleading standards, *Quering v. Bank of Florida Corp.*, 208-CV-627-FTM-29DNF, 2009 WL 1308610 (M.D. Fla. May 11, 2009), involved a pro se plaintiff who appears to have plead her case with little to no facts—accordingly, it is inapposite. This issue is better suited to a motion for summary judgment or a jury.

### iv. Bowers' Retaliation Claim

In regards to Count IX, Bowers retaliation claim, Defendants appear to advance the theory that if Bowers was not constructively discharge, then he could not have suffered an adverse employment action thereby precluding the claim for retaliation. (Doc. 41 at 23-25). This argument is nested in the constructive discharge discussion and not clearly presented, it is also wrong.

The Eleventh Circuit has recognized that "a materially adverse action 'means [the action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Further, the question of when an act is materially adverse is typically a jury matter for all but the most petty and trivial complaints. *Worley v. City of Lilburn*, 408 F. App'x 248, 250 (11th Cir. 2011) (citing *Crawford*, 529 F.3d at 973-74, n.13)). The assertions about VCNA's retaliatory actions, for instance seeking a pre-textual basis to terminate Bowers, are sufficiently non-trivial to state a claim regardless of whether Bowers was constructively discharged.

It is therefore,

**ORDERED**, Defendants Motion to Dismiss (Doc. 41) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 31, 2014.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party